IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | Chapter 7 |
| | : | |
| Sarah Goldstein, | : | Bankr. No. 24-10179- DJB |
| | : | |
| *Debtor* | : | |

| | | |
|---|---|---|
| Andrew R. Vara, | : | |
| United States Trustee, | : | |
| | : | |
| *Plaintiff* | : | |
| | : | |
| v. | : | Adv. No. 24-00121-DJB |
| | : | |
| Sarah Goldstein, | : | |
| | : | |
| *Defendant* | : | |

**JOINT PRE-TRIAL STATEMENT**

Andrew R. Vara, the United States Trustee for Region 3 ("Plaintiff" or "U.S. Trustee"), by and through his undersigned counsel, and Sarah Goldstein ("Defendant" or "Debtor"), through her legal counsel, Offit Kurman, P.C., (and together with the U.S. Trustee, the "Parties") hereby submit the following Joint Pre-Trial Statement regarding this adversary proceeding.

**Basis of Jurisdiction**

The Bankruptcy Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (H).

1

**Uncontested Facts**

1. On January 18, 2024 (the "Petition Date"), Debtor filed a voluntary petition (the "Petition") for relief under chapter 13 of title 11 of the United States Code (11 U.S.C. § 101 et seq., the "Bankruptcy Code"), which initiated the bankruptcy case captioned Sarah Goldstein, Bankr. No. 24-10179- DJB (the "Bankruptcy Case").

2. On September 19, 2024, the U.S. Trustee filed the Complaint of the United States Trustee Objecting to the Granting of Debtor's Discharge (Adv. Docket No. 1) (the "Complaint"), which initiated the adversary proceeding captioned United States Trustee v. Sarah Goldstein, Adv. No. 24-00121-DJB (the "Adversary Proceeding").

3. On December 24, 2024, Debtor filed the Answer to the Complaint (Adv. Docket No. 9) (the "Answer").

4. On March 11, 2025, the U.S. Trustee filed the Motion of the United States Trustee to Dismiss Debtor's Case Pursuant to 11 U.S.C. § 707(a) with a Bar to Refiling (Bankr. Docket No. 54) (the "Motion").

5. On March 27, 2025, Debtor filed the Response to the Motion (Bankr. Docket No. 58) (the "Response").

6. On December 9, 2025, the Court entered the Pretrial Order #3 (Adv. Docket No. 19) (the "Scheduling Order"), pursuant to which the parties are required to submit a joint pretrial statement on or before February 20, 2025. The Court on February 20, 2026 entered a subsequent Order extending the filing date of this Joint Pre-Trial Statement to March 6, 2026.

7. Debtor graduated dental school in Bulgaria in 1992. Debtor moved to the United States of America from Bulgaria in 2004. Debtor attended the International Dental Graduate Program ("IDGP") at Nova Southeastern University, Ft. Lauderdale, FL between 2009 and 2012.

Debtor graduated from the IDGP in 2012. Debtor is a licensed dentist.

8. Debtor filed her chapter 13 Petition on the Petition Date.

9. Debtor's case was converted to Chapter 7 on March 4, 2024, upon Praecipe to convert to Chapter 7 filed by Counsel on February 29, 2024.

10. Debtor was represented by Cibik Law, P.C. ("Cibik") in connection with filing of the Bankruptcy Case.

11. On November 20, 2024, Cibik filed a motion to withdraw as Debtor.

12. On December 19, 2024, the Court entered an order granting the motion of Cibik to withdraw as counsel to Debtor.

13. On December 24, 2024, the Law Offices of Jonathan J. Sobel ("Sobel") appeared as counsel for Debtor.

14. On July 3, 2025, Sobel withdrew as counsel to Debtor and Paul J. Winterhalter, Esquire of the firm Office Kurman, P.C. ("Counsel") appeared as counsel to Debtor.

15. Debtor's birth name is Tanya Markova Dzhendova ("Dzhendova"). Debtor changed her legal name on June 10, 2009 while attending dental school in Florida. The name change was effectuated by Court order upon filing of a petition for name change by Debtor.

16. Debtor has a personal checking account at Wells Fargo, with an account number ending in 8516 (the "Personal Checking Account"). Debtor is the only person that has authority to make transfers into or out of the Personal Checking Account.

17. Debtor's name is on an account at First Investment Bank held in the country of Bulgaria (the "Bulgaria Bank"), with an account number ending in 2588 (the "First Bulgaria Account"). The First Bulgaria Account was opened on September 28, 2021.

3

18. The First Bulgaria Account is held jointly by the Debtor and Minka Dimitrova Markova ("Mother").

19. Mother is the only person empowered to make transfers out of the First Bulgaria Account.

20. Debtor's name is on a second account at Bulgaria Bank with an account number ending in 0081 (the "Second Bulgaria Account" and collectively with the First Bulgaria Account, the "Bulgaria Accounts").

21. The Second Bulgaria Account was opened on July 18, 2022.

22. The Second Bulgaria Account is held jointly by the Debtor and Mother.

23. Mother is the only person empowered to make transfers out of the Second Bulgaria Account.

24. The Debtor did not disclose the Bulgaria Accounts in the Bankruptcy Case until filing of the second amended Schedule A/B: Property. (Bankr. Docket No. 41) (the "Second Amended Schedule A/B").

25. Debtor holds a 100% ownership interest in Dental Care Creative Arts and Cosmetics Studio P.C. ("Dental Care").

26. Dental Care has bank account at Wells Fargo Bank, with an account number ending in 4305 (the "Business Account").

27. The Debtor is the only authorized person to make deposits and withdrawals from the Business Account.

28. On July 17, 2023, the Debtor caused the transferred $50,100 (the "First Transfer") from the Dental Care Business Account to the First Bulgaria Account.

29. On November 27, 2023, the Debtor transferred $10,000 (the "Second Transfer")

from her Personal Checking Account at Wells Fargo Bank to the First Bulgaria Account.

30. The First Transfer and Second Transfer were made for the benefit of Mother. Although the Debtor states the First Transfer and Second Transfer were made to repay loans made by Mother, there is no written loan documentation between the Debtor and Mother.

31. The Debtor did not disclose the Transfers in the Bankruptcy Case until filing of the second amended Statement of Financial Affairs for Individuals Filing for Bankruptcy (Bankr. Docket No. 42) ("Second Amended SOFA").

32. Ms. Goldstein acknowledges the transfer of the $10,000 payment to the Bulgarian Account should have been disclosed on her bankruptcy Statement of Financial Affairs.

33. On October 25, 2023, Dental Care, Creative Arts and Cosmetic Studio, P.C., a professional corporation wholly owned by the Debtor purchased Merion Family Dentistry from Merion Dental Group, LLC. Merion Dental Group, LLC was owned and operated by Andrew Rosen, D.M.D.

34. Debtor worked at the newly acquired business for eight working (8) days, from November 2, 2023 through and including December 7, 2023.

35. After the acquisition of the new practice, Debtor practiced from the Merion Family Dentistry two days per week.

36. The First Transfer occurred prior to the purchase of Merion Family Dentistry. The Second Transfer occurred after the purchase of Merion Family Dentistry

37. Defendant disclosed her interest in the Wells Fargo Account with an amount valued at $2,276.84 in (Bankr. Doc. No. 41) (the "Second Amended Schedule A/B"). Defendant disclosed her interest in the Wells Fargo Account with a differing value of $2,500 in Schedule A/B: Property (Bankr. Doc. No. 1) ("Original Schedule A/B") and (Bankr. Doc. No. 23) (the

5

"First Amended Schedule A/B").

38. The Wells Fargo Account is the only checking, savings, or other financial account disclosed by Defendant in the First Amended Schedule A/B.

39. Debtor first identified and explained the Bulgarian Bank Accounts when asked by the Chapter 7 Trustee about transfers detailed on her personal Wells Fargo bank statement.

40. On Original Schedule A/B, Defendant discloses an interest in Nationwide Life Insurance (Whole Life) ("Nationwide Whole Life Policy") with a surrender or refund value of $700. Defendant also discloses an interest in Transamerica Life Insurance (Whole Life) ("Transamerica Whole Life Policy") with a surrender or refund value of $3,000.

41. On First Amended Schedule A/B and Second Amended Schedule A/B, Defendant discloses an interest in the Nationwide Whole Life Policy with a decreased surrender or refund value of $380.73. Defendant also discloses an interest in the Transamerica Whole Life Policy with a decreased surrender or refund value of $1,532.90.

42. On Original Schedule A/B, Defendant discloses total assets valued at $27,411. On First Amended Schedule A/B, Defendant discloses total assets valued at $50,624.63. On Second Amended Schedule A/B, Defendant discloses total assets valued at $87,385.58.

43. On (Bankr. Doc. No. 1) ("Original Schedule I"), Defendant discloses gross monthly income of $10,000 with ordinary and necessary operating expenses of $3,500 to arrive at the net amount of $6,500. On (Bankr. Doc. No. 27) ("Amended Schedule I"), Defendant discloses gross monthly income of $4,800 with ordinary and necessary operating expenses of $0 to arrive at the net amount of $4,800.

44. On (Bankr. Doc. No. 1) ("Original SOFA"), for the period from January 1, 2023 to December 31, 2023 (i.e., the complete calendar year prior to the bankruptcy), Defendant

6

discloses (i) gross income of $0 in wages, commissions, tips and bonuses and (ii) gross income of $3,204.25 from operating a business. For the period from January 1, 2024 to the Petition Date, Defendant discloses (i) gross income of $0 in wages, commissions, tips and bonuses and (ii) gross income of $0 from operating a business.

## **Contested Facts**

*Disputed Facts Proposed by US Trustee*

1. Debtor has an ownership interest in the First Bulgaria Account.

2. Debtor has an ownership interest in the Second Bulgaria Account.

3. Dental Care is not an operating entity and did not place any funds into the Business Account.

4. The funds in the Business Account consist solely of Debtor's income from practice as a licensed dentist.

5. Debtor deposits her income into the Business Account.

*Disputed Facts Proposed by Sarah Goldstein*

1. Sarah Goldstein did not believe the money maintained in the Bulgarian Bank accounts, despite the account being titled in her former name, was her property. Ms. Goldstein believed these funds were paid to and belong to her Mother.

2. Because Ms. Goldstein honestly believed the funds were not hers, she did not even think about the accounts which she did not control as being her property and innocently forgot she individually transferred the final $10,000 to her mother in November of 2023.

3. Ms. Goldstein was not asked whether she had made transfers to any family

member during the year prior to the bankruptcy filing when meeting with Mike Assad, Esquire, an associate in Michael Cibik's law office, when preparing the Bankruptcy Schedules and Statement of Financial Affairs in January of 2024.

    4.      While attending dental school in the United States between 2009 and 2012 Ms. Goldstein's Mother lent Debtor the sum of $60,000 in periodic payments to assist in payment her housing and living expenses while she obtained her needed U.S. Dental School degree to practice in the United States.

    5.      The monies were advanced to the Debtor by her mother in sporadic amounts approximately three to four times a year as the need for funds arose. Ms. Goldstein promised to repay her Mother the monies lent when she re-established herself in the United States as a practicing dentist.

    6.      In 2009, Ms. Goldstein formally changed her name to Sarah Goldstein by Court Order issued in Florida.

    7.      In 2021, following discussions with her Mother, Ms. Goldstein and her Mother arranged to open a Bank account in Bulgaria which was listed in Ms. Goldstein's Bulgarian birth name, but which restricted withdrawals from the bank account solely by her Mother.

    8.      Ms. Goldstein provided notarized Affidavits from the Bulgarian Bank confirming only her Mother had withdrawal access to the funds in the Bulgarian accounts once funds were deposited.

    9.      A second Bulgarian account was opened solely for the administrative purpose of transferring funds from U.S. Dollars to Bulgarian currency. Again, Debtor's Mother was the sole individual who was authorized and empowered to make any transfers from this account.

    10.      Ms. Goldstein provided full documentation of the bank account statements and

8

account restrictions to Lynn Feldman who served as the Chapter 7 Trustee.

11. Trustee Feldman reviewed the Affidavits and Bank Statements provided by the Bulgarian Banks and determined the Estate had no interest in the funds in the account or pursuing relief on the accounts was not economically feasible for the Estate.

### **Damages or Other relief**

*Proposed by the Plaintiff*

1. On Count I against Defendant, for an order by this Court denying Defendant's discharge from her debts pursuant to 11 U.S.C. § 727(a)(2)(A).

2. On Count II against Defendant, for an order by this Court denying Defendant's discharge from her debts pursuant to 11 U.S.C. § 727(a)(2)(B).

3. On Count III against Defendant, for an order by this Court denying Defendant's discharge from her debts pursuant to 11 U.S.C. § 727(a)(3).

4. On Count IV against Defendant, for an order by this Court denying Defendant's discharge from her debts pursuant to 11 U.S.C. § 727(a)(4)(A).

5. On Count V against Defendant, for an order by this Court denying Defendant's discharge from her debts pursuant to 11 U.S.C. § 727(a)(4)(D).

6. On Count VI against Defendant, for an order by this Court denying Defendant's discharge from her debts pursuant to 11 U.S.C. § 727(a)(5).

7. If the none of the above are granted, for an order by this Court dismissing the Debtor's case pursuant to 11 U.S.C. § 707(a) with a bar to refiling.

*Proposed by Sarah Goldstein*

Ms. Goldstein seeks Judgment under the adversary proceeding be entered in her

favor on all issues raised and further that her Chapter 7 Discharge be entered and case closed.

## Legal Issues

*As proposed by Plaintiff*

1. Whether Defendant's transfer and concealment of the (i) First Bulgaria Account and Second Bulgaria Account, which were not disclosed until two hundred thirteen (213) after the Petition Date, and (ii) First Transfer and Second Transfer, which were not disclosed until two hundred seventeen (217) after the Petition Date, is sufficient to deny a discharge pursuant to Bankruptcy Code section 727(a)(2)(A).

2. Whether Defendant's transfer and concealment of the (i) First Bulgaria Account and Second Bulgaria Account, which were not disclosed until two hundred thirteen (213) after the Petition Date, and (ii) First Transfer and Second Transfer, which were not disclosed until two hundred seventeen (217) after the Petition Date, is sufficient to deny a discharge pursuant to Bankruptcy Code section 727(a)(2)(B).

3. Whether Defendant's failure to provide documentation and information regarding the (i) First Bulgaria Account and Second Bulgaria Account and (ii) First Transfer and Second Transfer, is sufficient to deny a discharge pursuant to Bankruptcy Code section 727(a)(3).

4. Whether Defendant's filing of Schedules and Statements that failed to disclose the (i) First Bulgaria Account and Second Bulgaria Account, which were not disclosed until two hundred thirteen (213) after the Petition Date, and (ii) First Transfer and Second Transfer, which were not disclosed until two hundred seventeen (217) after the Petition Date, is sufficient to deny a discharge pursuant to Bankruptcy Code section 727(a)(4)(A).

5. Whether Defendant's failure to provide the chapter 7 trustee with requested information regarding the (i) First Bulgaria Account and Second Bulgaria Account and (ii) First Transfer and Second Transfer, is sufficient to deny a discharge pursuant to Bankruptcy Code section 727(a)(4)(D).

6. Whether Defendant's failure to explain satisfactorily the transfers of estate assets through the First Transfer and Second Transfer, is sufficient to deny a discharge pursuant to Bankruptcy Code section 727(a)(5).

7. Whether the Defendant received funds from Mother and, if so, whether the Debtor was obligated to repay those funds and the timing of any such obligation to repay.

8. Whether the Debtor's failure to file schedules and statements making full and accurate disclosures, including a failure to disclose the (i) First Bulgaria Account and Second Bulgaria Account, which were not disclosed until two hundred thirteen (213) after the Petition Date, and (ii) First Transfer and Second Transfer, which were not disclosed until two hundred seventeen (217) after the Petition Date, is sufficient cause for dismissal pursuant to Bankruptcy Code section 707(a).

*As Proposed by Ms. Goldstein*

1. Whether Ms. Goldstein knowingly withheld information related to the November 2023 repayment to her Mother or acted in any way to prevent disclosure of such information sufficient to support a denial of her bankruptcy discharge under 11 U.S.C.§727(a)(2)(A)?

2. Whether Ms. Goldstein knowingly, with the intent to hinder, delay, or defraud any creditor or officer of the Bankruptcy Estate, transferred, removed, or concealed property of the estate after the filing of the petition sufficient to support a denial of her bankruptcy discharge

under 11 U.S.C.§727(a)(2)(B)?

3. Whether Ms. Goldstein concealed or failed to produce any relevant financial information, including the bank statements from the Bulgarian First Investment Bank for the year preceding the Bankruptcy filing from her counsel or Lynn Feldman as the Chapter 7 Trustee, or failed to provide explanation or documentation regarding any financial transaction sufficient to support a denial of her bankruptcy discharge pursuant to 11 U.S.C.§727(a)(3)?

4. Whether Ms. Goldstein fraudulently and with specific intent failed to list the transfer to her Mother made in November of 2023, when not asked by bankruptcy counsel about the transfer from a personal bank account when preparing her Statement of Financial Affairs and did produced the bank account statements to the Chapter 7 Trustee when requested to provide is sufficient to support a denial of her bankruptcy discharge under 11 U.S.C.§727(a)(4)(A) or (D)?

5. Whether Ms. Goldstein has failed to explain the receipt of loan monies from her Mother between 2009 and 2012 while she was in Dental School in the United States, and the process of repaying those loan monies from her business in July of 2023 and from her personal account in November 2024 sufficient to deny her a bankruptcy discharge pursuant to 11 U.S.C.§727(a)(5)?

6. Whether the Plaintiff has presented any basis for this Court to deny Ms. Goldstein her bankruptcy discharge or dismiss her bankruptcy case under 11 U.S.C.§707(b) if substantially all of her debts are business debts?

### Witnesses

*For Plaintiff*

Sarah Goldstein

*For Sarah Goldstein*

Sarah Goldstein

Lynn Feldman, Chapter 7 Trustee  (potential?)

**Exhibits**

*Joint Exhibits*

Chapter 7 Schedules

Chapter 7 Statement of Financial Affairs

Amended Schedules and Statements

Complaint

Answer to Complaint

*U.S. Trustee Exhibits*

Motion to Withdraw as Attorney for Debtor filed by Cibik Law, P.C.

Order Granting Motion To Withdraw As Attorney as to Cibik Law, P.C.

*Debtor's Exhibits*

Affidavits of First Investment Bank

    (a)- Certification of Authorized User (6/7/2024)

Affidavits of Minka Dimitrova Markova

Florida Order Approving Name Change (6/10/2009)

TD Bank $200,000 Term Loan Commitment-Sept. 28, 2023

TD Bank $50,000 LOC Commitment- September 28, 2023

Asset Purchase Agreement for Merion Family Dentistry dated October 25, 2023

Commercial Real Estate Lease Assumption and Assignment Agmt.-Oct. 25, 2023

Debtor's Personal Well Fargo 2023 Bank Statements

Dental Arts 2023 Business Bank Statements

Wire Transfer Receipt from Dental Care-July 23, 2023

First Investment Bank Statements-2023

### Motions in Limine

The Parties do not anticipate any Motions in Limine.

### Discovery

Debtor will introduce translated Notarized Affidavits produced during the case from First Investment Bank AD (JSC) of Sofia, Bulgaria. Debtor will also introduce the translated Notarized Affidavit of Minka Dimitrova Markova (Mother).

### Estimated Time of Trial

1 day

### Settlement Certification

The parties have attempted good faith settlement discussions without success.

Respectfully submitted,

**OFFIT KURMAN, P.C.**

By: */s/ P.J. Winterhalter*
PAUL J. WINTERHALTER
2000 Market Street, Suite 2700
Philadelphia, PA 19103
Telephone: (267) 338-1370
E-mail: *pwinterhalter@offitkurman.com*

*Counsel to Sarah Goldstein, Debtor*

        ANDREW R. VARA
        UNITED STATES TRUSTEE
        For Regions 3 and 9

        By**:** ***/s/ John Schanne***
        John Schanne, Trial Attorney
        Office of The United States Trustee
        Robert NC Nix, Sr. Federal Building
        900 Market Street, Suite 320
        Philadelphia, PA 19107
        Phone: 202.934.4154
        Email: *John.Schanne@usdoj.gov*

Dated: March 6, 2026